IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **Ashley Adams., et al** § | | |
| *Plaintiffs*, § | | |
| § | | |
| v. § | Civil Action No. 3:13-cv-217 | |
| § | | |
| **Brad Livingston, et al** § | | |
| *Defendants*. § | | |

## DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants Brad Livingston, Rick Thaler, William Stephens, Robert Eason, Dennis Miller and Texas Department of Criminal Justice ("Defendants") move to transfer venue under 28 U.S.C. § 1404(a) from the Southern District of Texas to the Tyler Division of the Eastern District of Texas.

## STATEMENT OF THE CASE

Defendants request that this Court transfer this case to the Tyler Division of the Eastern District of Texas. Section 1404(a) provides a mechanism for the transfer of any civil action to any other district where it might have been brought originally. The public and private interests in this matter weigh in favor of transferring this suit to the Eastern District.

This lawsuit is a wrongful death action, arising out of the death of 3 offenders, Rodney Adams, Kenneth Wayne James and Douglas Hudson who all resided at the Gurney Transfer Facility in Palestine, Texas.[1] This facility is a transfer facility operated by the Texas Department of Criminal Justice ("TDCJ"), and is referred to throughout the Plaintiffs' pleadings as "Gurney Unit." For continuity purposes, Defendants will also refer to the facility as "Gurney Unit." Plaintiffs allege that the deceased offenders all died from Defendants lack of action to the extreme heat and the deceased offenders medical issues.

---

[1] Plaintiff has filed three separate wrongful death suits. Defendants contend that they should be severed and will file an appropriate motion to sever.

Plaintiffs are the purported surviving relatives of the deceased offenders. In their Petition, Plaintiffs assert various claims under federal and state law against the Defendants. Specifically, Plaintiffs assert federal claims under 42 U.S.C. §1983, for violating their deceased relatives' constitutional rights to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment. Plaintiff further alleges that TDCJ caused the death of the offenders by failing to provide reasonable accommodations for their disabilities, in violation of Title II of the Americans with Disabilities Act ("ADA"), and the ADA Amendments Act ("ADAAA"), 42 U.S.C. §12131 *et seq*., and Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. §794 ("Rehabilitation Act"). Defendants Brad Livingston, Rick Thaler, William Stephens, Robert Eason, Dennis Miller are sued in their individual capacities for punitive and compensatory damages. Plaintiffs' only claim against Defendant University of Texas Medical Branch (UTMB) is violation of the Americans With Disabilities Act (ADA) for failure to accommodate offenders for heat related issues. Defendant TDCJ is sued for compensatory relief.

## ARGUMENT AND AUTHORITIES

**A. Motion to Transfer standard.**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26-27, 80 S.Ct. 1470 (1960). The decision whether to transfer a case under § 1404(a) is a matter within the district court's sound discretion. *Jarvis Christian Coll. v. Exxon Corp.,* 845 F.2d 523, 528 (5th Cir.1988). In considering a motion to transfer venue pursuant to § 1404(a), the district court must consider "all

relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989). Furthermore, courts should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co., L.P. v. A & H Supply Co.,* 396 F.Supp.2d 766, 776 (S.D.Tex.2005).

The convenience determination for purposes of § 1404(a) turns on private and public interest factors. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004). "[P]rivate concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the costs of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious and inexpensive." *Id.* "[P]ublic concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* The plaintiff's choice of forum is an additional consideration. *Fletcher v. S. Pac. Transp. Co.,* 648 F.Supp. 1400, 1401 (E.D.Tex.1986). The Fifth Circuit recently clarified that the plaintiff's choice of forum is entitled to deference and that the moving party must show "good cause" for a transfer. *In re Volkswagon AG*, 506 F.3d 376, 384 (5th Cir. 2007). The Fifth Circuit explicitly stated that the moving party need not show that the balance of convenience and justice weighed substantially in favor of a transfer, rather, "where the transferee forum is clearly more convenient, a transfer should be ordered." *Id.* Here, the Eastern District is clearly more convenient, thus, a transfer should be ordered.

3

**B. The Eastern District of Texas, Tyler Division, is an appropriate venue.**

Section 1404(a) provides that a case may only be transferred to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). The Eastern District of Texas is an appropriate venue for this case. Section 1391(b) of Title 28 of the United Stated Code provides:

> [a] civil action wherein jurisdiction is not founded solely only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

This case might have been brought in the Eastern District of Texas, Tyler Division, because (1) Defendant Dennis Miller, in his official capacity as a Warden of Gurney Unit located in Palestine, Texas which is in Eastern District, Tyler Division and Defendant Robert Eason resides in Anderson County which is in Eastern District, Tyler Division and (2) a substantial part of the events or omissions giving rise to the claims alleged by Plaintiffs occurred there. *Id.; see also Plaintiff's Original Complaint at 4-5. (Docket Entry No. 1)*. There is no dispute that the events complained of in Plaintiff's Original Complaint all occurred at the Gurney Unit located in Palestine, Texas, which is in the Tyler Division of the Eastern District of Texas. Therefore, this case could have been brought in that forum.

**C. Plaintiffs' choice of forum is entitled to little deference.**

Generally, a plaintiff's choice of forum is entitled to some deference. However, this consideration is not conclusive or determinative. *See In re Horseshoe Entm't*, 337 F.3d 429, 434-35 (5th Cir.2003). In addition, the weight to be accorded the plaintiff's choice of forum is diminished

where plaintiff brings suit outside his home forum. *Heppner v. Krause Plow Corp., Inc.*, No. Civ. A.33CV0083D, 2001 WL 124947 at *2 (N.D. Tex. Feb. 18, 2001). Here, Plaintiffs are not residents of the Southern District of Texas. Moreover, all of the operative facts underlying Plaintiffs' claims occurred in the Eastern District where the Plaintiffs' deceased relatives were housed. Because the Plaintiffs do not reside in the Southern District and all of the operative facts made the basis of their Complaint occurred in the Eastern District, the Plaintiffs' choice of forum should be given little deference. *Noble v. Geo Group, Inc.*, No. A-07-CA-968, 2008 WL 2609208 at *4 (W.D. Tex. June 27, 2008).

Furthermore, Plaintiffs' claims against UTMB are tenuous at best. Essentially, Plaintiffs' claim against UTMB is an intentional discrimination claim under the ADA. UTMB has filed a 12(b)(6) Motion to Dismiss (currently pending) and it is possible that the Court will grant UTMB's Motion to Dismiss. *See Docket Entry No. 5*. If this is so, the case would have lost sole connection with Galveston or the Southern District. Also, the majority of the UTMB employees that are likely to testify at trial live in the Palestine or Tyler area. Although, UTMB is head-quartered in Galveston all of their actions pertaining to this lawsuit occurred in the Eastern District, Tyler Division.

**D. The private interest factors weigh in favor of transfer.**

**1. Access to Proof**

In this case, the balance of factors weigh towards transferring the case to the Eastern District because all sources of proof, including documents, physical evidence, and the incident site, are located in the Eastern District or are already in the Plaintiff's possession. Furthermore, the local hospitals that the deceased offenders were taken to are all located in the Tyler Division, Eastern District. For example, Rodney Adams was taken to Palestine Regional Medical Center and East

Texas Medical Center in Tyler, Texas.[2] Also, Plaintiffs contend that the policies and procedures in place at this facility are damaging specifically to offenders with disabilities. Thus, all access to proof including records, medical documents, intake sheets, treating physicians, etcetera, are available at or near the Gurney Unit in the Eastern District of Texas.

### 2. Availability of Compulsory Process to Secure Witnesses

It is anticipated that most witnesses in this case will be willing witnesses, however, there is some potential that former employees or residents of the Gurney Unit may be called through compulsory process. The attendance of these witnesses presumably would be secured through the issuance of a subpoena or *writ of habeas corpus ad testificandum*. The majority of former Gurney Unit employees still live in Palestine, Texas or the surrounding areas.

At this time, the Defendants have identified 92 potential witnesses for all three incidents (Exhibit A). For clarity Defendants have attached a potential witness list that is divided each incident. Of these 92 potential witnesses, 87 live in the Tyler Division. (Exhibit A). The list does not include Defendants Thaler, Livingston and Stephens who may testify for each incident. However, Defendants Thaler, Livingston and Stephens live in East Texas and conducting the lawsuit in the Tyler Division would be more accessible for them. On July 24, 2013, Plaintiffs' filed an Amended Complaint and added 16 new defendants (both TDCJ and UTMB employees). The majority of these additional defendants also reside in the Eastern District. Clearly, Tyler would be more accessible to all witnesses than Galveston.

---

[2] Kenneth Wayne James and Douglas Hudson were taken to Palestine Regional Medical Center also in the Eastern District.

Federal Rule of Civil Procedure 45(c)(3)(B)(iii) states that a court may quash a subpoena that requires a party or non-party to travel more than 100 miles to attend trial if the person would incur substantial expense. A vast majority of the non-party witnesses are residents of the Eastern District of Texas, Tyler Division. (Exhibit A). Furthermore, a majority of the witnesses live near or in Palestine, Texas. Palestine is located approximately 220 miles from Galveston. Palestine is located approximately 45 miles from Tyler. Those witnesses are thus fully subject to service of a subpoena issued by the Eastern District of Texas. FED. R. CIV. P. 45(b). In the Southern District, the same witnesses are outside the subpoena power for deposition. FED. R. CIV. P. 45(c)(3)(A)(ii). Any trial subpoenas for these witnesses to travel more than 100 miles would be subject to motions to quash under Federal Rule of Civil Procedure 45(c)(3). Federal Rule of Civil Procedure 45(c)(3)(B)(iii) states that a court may quash a subpoena that requires a party or non-party to travel more than 100 miles to attend trial if the person would incur substantial expense. Non-party witnesses will incur significant expense in travel, lodging and food costs, which will be avoided if the case is litigated and tried in Tyler.

Moreover, the fact that this Court could deny any motions to quash and ultimately compel the attendance of the witnesses "does not address concerns regarding the convenience of the parties and witnesses." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 316 (2008). A proper venue that does enjoy absolute subpoena power for both depositions and trial over the non-party witnesses- the Eastern District of Texas– is available. This factor weighs heavily in favor of transfer.

**3. Costs of Attendance of Willing Witnesses**

The convenience of the witnesses has often been cited as the most important factor in determining whether a case should be transferred pursuant to §1404(a). *See Continental Airlines Inc.*

*v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992). However, this factor does not stand alone and must be weighed against the other relevant factors that typically are considered. *Id.* This is a significant factor in the case before this court, and should be accorded great weight. It is the convenience of the non-party witnesses as opposed to the party witnesses that is most important. *Mohamed v. Mazda Motor Corp.,* 90 F.Supp. 757, 775 (E.D. Tex. 2000).

In this case, nearly all witnesses reside or work at the Gurney Unit. These individuals will include inmate witnesses residing at the Gurney Unit, TDCJ corrections officers, mental health staff, administrators and security personnel all working at Gurney Unit. Key witnesses in this case will be those who are most familiar with the Gurney Unit and the activities that occurred there which will include residents and staff alike. Due to the lengthy drive times between Palestine and Galveston, overnight accommodations will be required. This is especially true for convicted felons who cannot safely be in transit for seven hours each day (the drive from Palestine to Galveston is approximately 3 ½ hours one way). The estimation of the drive from Palestine to Galveston is an optimistic estimation that does not take into consideration Houston and the Houston metro-plex's traffic delays. Finding overnight accommodations, or in the alternative, requiring the witnesses to be in transit for extended periods of time each day, poses a significant hardship on the parties and non-parties. Should this case proceed in Galveston, rather than in the Eastern District, these witnesses will incur significant expense and hardship in travel costs and hotel accommodations. Finding overnight accommodations, or in the alternative, requiring the witnesses to be in transit for extended periods of time each day, poses a significant hardship on the parties and non-parties.

Under the Fifth Circuit's "100-mile rule", when the distance between the existing venue and the proposed venue is more than 100 miles, the factor of inconvenience to witnesses increased in

direct relationship to the additional distance to be traveled. *In re Volkswagen of American Inc.*, 371 F.3d 201, 204-05 (5th Cir. 2004). Pointing out the additional considerations of an inconvenient forum, the Court stated, "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment. Furthermore, the task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour." *Id.* It is clear here that this case will involve a number of witnesses and extensive discovery. Allowing this case to remain in the Galveston Division will likely create a hardship or at least be more costly to most of the witnesses and Defendants. Applying the 100 mile rule here, it is clear that traveling a distance of approximately 200 miles favors transfer. *See In re Volkswagen of America Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc). (finding that 155 miles favored transfer). It is not fair to the witnesses or the Defendants to allow this case to remain in the Galveston Division. The severe inconvenience and expense would be avoided by transferring the case to the Tyler District.

Some of the potential witnesses are inmate witnesses who reside at the Gurney Unit.[3] Due to the status of the inmate witnesses as convicted felons, some having committed serious violent offenses, special consideration is required in housing, transportation, and supervision. This is a significant factor that should be accorded great weight. These individuals must be housed in secure

---

[3] At this time Defendants have not found all the inmate witnesses at the Gurney Unit who have relevant information about the allegations in this lawsuit. However, Defendants anticipate upon further investigation that there will be more inmate witnesses at the Gurney Unit who will testify at trial.

facilities operated by TDCJ. If the case is tried in the Eastern District, inmate witnesses would remain in the Gurney Unit and make day trips to the Court. However, if the case proceeds in the Southern District, incarcerated witnesses will need to be housed overnight in facilities that are closer to Galveston.[4] To the extent Plaintiff's argue that it is easy to place inmates in new units, Defendants would state that some offenders may require special accommodations because of their incarceration history and/or crime. As of now, Defendants are unable to determine how many inmate witnesses have special circumstances that effect their housing determination.

Furthermore, the Gurney Unit will need to incur unnecessary expenses such as overtime costs to cover the extended absence of employees needed as witnesses, or those needed to supervise the inmate witnesses. Transferring this case to the Tyler Division would be far more convenient, safe, and practical for the witnesses and staff who supervise the inmate witnesses. This factor involves the safety and well being of the inmate witnesses as well as TDCJ staff and weighs heavily in favor of transfer. For these reasons, the case should be transferred to the Eastern District.

**4. Practical Considerations Concerning the Speed and Expense of Trial**

The location of the alleged wrong is a significant factor that weighs in favor of transfer. *Ray Mart, Inc. v. Stock Bldg. Supply of Tex.*, 435 F.Supp.2d 578, 593 (E.D.Tex 2006); *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 792 (S.D.Tex. 2005). According to Plaintiffs' complaint, all of the alleged actions upon which their claims are based occurred in Anderson and Smith County, Texas, which are located in the Tyler Division, Eastern District. All the investigations took place in the Tyler Division. The evidence and investigative reports, including reports generated by Palestine Regional Medical Center, East Texas Medical Center and TDCJ

---

[4] At this time none of the potential inmate witnesses reside anywhere in the Southern District.

Region II internal affairs are all in the Tyler Division. Most of the witnesses are in or around Tyler. It is axiomatic that litigating and trying this case in Tyler as opposed to Galveston, will result in a substantial cost and time savings to the parties, witnesses and governmental entities.

**E. The public interest factors weigh in favor of transfer.**

**1. Administrative Difficulties Flowing from Court Congestion.**

The Southern District, Galveston Division court is significantly more congested than the Eastern District, Tyler Division. According to information found on the Southern District's website, the Southern District has 11,784 pending lawsuits as of December 31, 2012.[5] Of those cases the Galveston Division has 383 pending civil lawsuits (as of May 31, 2013) for only one District Judge and one Magistrate Judge.[6] Whereas the Eastern District has 5,416 pending lawsuits as of December 31, 2012.[7] Of those cases the Tyler Division has 546 pending civil lawsuits (as of June 30, 2013) that is shared between two District Judges and two Magistrate Judges.[8] Also, it is logical to presume that the docket in Galveston is significantly heavier than that of Tyler, given the difference in population of the two areas served. This factor weighs in favor of transfer.

---

[5] This information is available in pdf format in the "Statistics" section listed on the Southern District's website http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2012/district-fcms-profiles-december-2012.pdf#page=36, last visited July 15, 2013.

[6] Although the Southern District does not have comparative information available online for each division within the District, the undersigned was informed of this information by the district clerk of the Galveston Division, Southern District.

[7] This information is available in pdf format in the "Statistics" section listed on the Southern District's website http://www.uscourts.gov/uscourts/Statistics/FederalCourtManagementStatistics/2012/district-fcms-profiles-december-2012.pdf#page=36, last visited July 15, 2013.

[8] Although the Eastern District does not have comparative information available online for each division within the District, the undersigned was informed of this information by the district clerk of the Tyler Division, Eastern District.

**2. Local Interest**

The Eastern District has a far more direct interest in adjudicating this case than the Southern District. The majority of the alleged actions upon which Plaintiffs' claims all occurred at the Gurney Unit in Palestine, Texas. None of the events described in Plaintiffs' Complaint occurred in or near Galveston, Texas. Clearly, the citizens of the Tyler Division have a stronger interest in correcting alleged wrongs that took place in their community, as well as clearing the names of the Defendants. *Lindloff v. Schenectady Int'l*, 950 F.Supp. 183, 186 (E.D. Tex. 1996). The Plaintiffs' also stress in the Original Complaint the importance of the public's interest in this case. The Plaintiffs' chart in their Original Complaint depict that the majority of the people who have allegedly died from heat-related issues are located in the Eastern District and more specifically the Tyler Division. *See Plaintiff's Original Complaint at 8*. In fact none of the deaths listed by the Plaintiffs' in their chart occurred in the Galveston Division. *Id.* The jurors located in the district where all the alleged wrongful acts occurred have a higher interest in the acts that occur in their community. Also, the jurors in the Eastern District would most understand the heat-related issues specific to the region where the Gurney Unit is located. There is definitely more local interest in the area where these unfortunate deaths occurred.

Also, it is important to note that Plaintiffs' sole basis for bringing this case in Galveston is that UTMB's headquarters are located on the island. No factual connection exists between Galveston and the deceased offenders housing status, medical care, supervision, or any other aspect of their lives or deaths.

It should also be noted that UTMB is unlikely to remain a defendant in this case. UTMB will be entitled to sovereign immunity for all claims asserted against it under 42 U.S.C. § 1983. Plaintiffs

have sought no injunctive relief. The sole legal claim against UTMB is Plaintiff's ADA claim seeking damages. To assert such a claim, Plaintiff would need to show intentional discrimination by UTMB officials to deny the Plaintiff access to programs, services, or activities by reason of a disability that substantially limited their major life activities. Quite plainly, this claim is dubious at best, particularly so in light of the fact that UTMB officials do not control the building design or construction of TDCJ facilities, nor do they oversee day-to-day operations there. There is a significant likelihood that this claim will be dismissed on a motion to dismiss or a motion for summary judgment, thereby depriving the case of its one and only connection to the Southern District of Texas and Galveston. It would be unfair to burden the Galveston Division residents with jury duty in a case in which their community has no connection. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). This factor also favors transfer to the Eastern District of Texas.

## CONCLUSION

Defendants have shown good cause by demonstrating that a transfer is warranted for the convenience of the parties and witnesses and in the interest of justice. For these reasons, Defendants respectfully pray this Court grant this motion to transfer venue and transfer this case to the Tyler Division, Eastern District of Texas. Defendants also request all other appropriate relief to which they may be entitled.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

        **KAREN D. MATLOCK**
        Chief, Law Enforcement Defense Division

        */s/ Bruce R. Garcia*
        **BRUCE R. GARCIA**
        Assistant Attorney General
        Attorney-in-charge
        State Bar No. 07631060
        Attorney-in-charge

        **RACHAEL AIREN**
        Assistant Attorney General
        State Bar No. 24068148
        P. O. Box 12548, Capitol Station
        Austin, Texas  78711
        (512) 463-2080
        Fax No. (512) 495-9139
        **Attorneys for Defendants Eason, Miller and TDCJ**

        */s/Demetri Anastasiadis*
        **DEMETRI ANASTASIADIS**
        Assistant Attorney General
        Attorney-In-Charge
        State Bar No. 011 64480
        **Attorney for Defendants Livingston, Thaler and Stephens**

## NOTICE OF ELECTRONIC FILING

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendants' Motion to Transfer Venue**. In accordance with the Electronic Case Files System of the Southern District of Texas, on this the 8th day of August, 2013.

        */s/ Bruce R. Garcia*
        **BRUCE R. GARCIA**
        Assistant Attorney General

## CERTIFICATE OF CONFERENCE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that I have conferred with opposing counsel Jeff Edwards in accordance with the local rules of the Southern District. This conference took place via email. Mr. Edwards indicated that he would be opposed to this motion.

*/s/ Bruce R. Garcia*
**BRUCE R. GARCIA**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **BRUCE R. GARCIA**, Assistant Attorney General of Texas, do hereby certify that a true and correct copy of the above and foregoing **Defendants' Motion to Transfer** has been served electronically via *Southern District of TEXAS LIVE - Document Filing System*, to Plaintiffs' Lead Attorney, Jeff Edwards at **jeff@edwards-law.com** and Defendant UTMB's Lead Attorney, Kim Coogan at **kim.coogan@texasattorneygeneral.gov** on the 8th day of August, 2013.

*/s/ Bruce R. Garcia*
**BRUCE R. GARCIA**
Assistant Attorney General