IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ASHLEY ADAMS, individually and as the representative of the Estate of RODNEY GERALD ADAMS; and WANDA ADAMS, individually; § § § § § | | |
| CARLETTE HUNTER JAMES, individually and as the representative of the Estate of KENNETH WAYNE JAMES; KRISTY JAMES, KRYSTAL JAMES, KENDRIK JAMES, ARLETT JAMES, JONATHAN JAMES, and KENNETH EVANS, individually and as heirs-at-law to the Estate of Kenneth Wayne James, and MARY LOU JAMES, individually, § § § § § § § § § | | |
| CADE HUDSON, individually and as the representative of the Estate of DOUGLAS HUDSON, § § § | | |
| PLAINTIFFS, § § | | |
| v. § § | Civil Action No. 3:13-cv-217 | |
| BRAD LIVINGSTON, individually and in his official capacity, RICK THALER, WILLIAM STEPHENS, ROBERT EASON, DENNIS MILLER, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, and UNIVERSITY OF TEXAS MEDICAL BRANCH, § § § § § § § § | | |
| DEFENDANTS. § | | |

**DEFENDANT OWEN MURRAY'S MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Owen Murray, D.O. moves to dismiss Plaintiffs' claims against him based upon his entitlement to qualified immunity. In support of this motion, Dr. Murray offers the following:

# I.
## Statement of the Case

Plaintiffs, who are alleged to be surviving heirs-at-law and statutory beneficiaries of decedents Rodney Adams, Kenneth Wayne James, and Douglas Hudson, bring suit against Dr. Murray and several other defendants for alleged violations of the Eighth and Fourteenth Amendments, Title II of the Americans with Disabilities Act, and § 504 of the Rehabilitation Act.[1] D.E. 8. Plaintiffs complaints center around the alleged extreme heat conditions that existed during the summer of 2011 in Texas. Specifically, Plaintiffs contend that because the decedents suffered from alleged "heat-sensitive disabilities" and were incarcerated at the Gurney Unit, in non-air-conditioned housing, Defendants violated the decedents' constitutional rights by subjecting them to unconstitutional conditions of confinement, demonstrating deliberate indifference to their serious medical needs, and intentionally discriminating against them based solely upon their disabilities.

Dr. Murray is listed as one of the seven "Executive Defendants." *Id*. at 5-7. As the chief executive physician for the University of Texas Medical Branch, Correctional Managed Care (UTMB), Plaintiffs sue him in his individual capacity for compensatory and punitive damages. *Id*. at 7.

According to the causes of action listed in Plaintiffs' amended complaint, Dr. Murray is not being sued under any cause of action. *D.E. 8*, 55-62. Under the "Eighth and Fourteenth Amendment Conditions of Confinement" section, Plaintiffs specifically state that the cause of action is being asserted against only Defendants Livingston, Thaler, Stephens, Eason, and Miller in their individual capacities. *Id*. at 55. The other causes of action also fail to specifically state they are being brought

---

[1] This motion will address only the claims against Dr. Murray.

against Dr. Murray. *Id*. at 56-62. Plaintiffs failure to specifically assert a cause of action against Dr. Murray requires dismissal of their claims against him.

Assuming Plaintiffs' reference to Dr. Murray in paragraphs 214-15 was intended to assert a conditions of confinement cause of action against Dr. Murray, the argument above demonstrates the reasons Plaintiffs' conclusory allegations fail to state viable deliberate indifference claims, and thereby fail to overcome his entitlement to qualified immunity.

## II.
## Arguments in Support of Motion to Dismiss

**A.     Plaintiffs' conclusory allegations fail to satisfy the heightened pleading requirement necessary to overcome Dr. Murray's entitlement to qualified immunity.**

A district court may not dismiss a complaint under Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Manguno v. Prudential Prop. and Casualty Ins. Co.*, 276 F.3d 720, 725 (5th Cir.2002) (citing *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997)). The court must determine whether the complaint states any valid claim for relief in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Manguno*, 276 F.3d at 725. However, the plaintiff must plead specific facts, not mere conclusory allegations or unwarranted deductions of fact, in order to avoid dismissal for failure to state a claim. *Collins*, 224 F.3d at 498. In sum, "[a] Rule 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent

dismissal under Rule 12(b)(6)." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir.2002) (footnote omitted).

Moreover, a plaintiff must satisfy a heightened pleading standard in cases involving qualified immunity. *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985). The plaintiff's complaint must "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of qualified immunity." *Id.* at 1473. This standard requires more than conclusory assertions. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir.1996). A plaintiff must make specific factual allegations that support each individual defendant's role in the constitutional deprivations at issue. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir.2002).

Plaintiffs' amended complaint is 67 pages long and contains 174 paragraphs of "facts." *D.E. 8,* pp. 12-54. Despite the length of the amended complaint, Plaintiffs fail to provide more than conclusory allegations to support their claims against Dr. Murray. Specifically, Plaintiff's aver Dr. Murray has been "grossly derelict and deliberately indifferent when it comes to protecting inmates vulnerable to the heat." *Id.* at 17. Dr. Murray is alleged to know that temperatures over 90 degrees Farenheit indoors is harmful medically and potentially lethal to inmates that have hypertension, depression, mental illness, or are merely over 40 years old. *Id.* at 18. Plaintiffs' amended complaint presumes Dr. Murray is liable for unconstitutional conditions of confinement because he is aware that some inmates possess medical conditions that may be negatively impacted by hot temperatures and the Gurney Unit is not air-conditioned. But Plaintiffs fail to allege or demonstrate Dr. Murray had personal knowledge the decedents had medical conditions that made them vulnerable to the alleged temperatures at the Gurney Unit during August 2011 and August 2012. All Plaintiffs provide is the conclusory allegation that, because 14 inmates are alleged to have died as a result of the

extreme heat in the non-air-conditioned housing areas at various TDCJ units since 2007, Dr. Murray has done nothing to try to protect "the weakest inmates TDCJ houses." *Id*. at 21.

Plaintiffs also assert that it can take up to 10 days for inmates to receive intake physicals at the Gurney Unit, and this time lapse leaves inmates with heat-sensitive conditions in grave danger. *D.E. 8*, p. 24. But that fact does not correspond to the decedents' experiences at the Gurney Unit. In fact, according to Plaintiffs' amended complaint, all of the decedents had been evaluated by medical staff soon after their arrival to the Gurney Unit. *Id*. at 41, 46, 52. Thus, decedents' experiences do not support the conclusory allegation that Dr. Murray is aware inmates do not timely receive intake physicals.

In addition, Plaintiffs contend Dr. Murray made the decision not to provide around-the-clock care at the Gurney Unit. *Id*. at 26. Between the hours of 6 PM and 9 AM, inmates needing immediate medical attention are taken to the Beto Unit or hospital. Plaintiffs ask the Court to accept this conclusory allegation as factual support for their contention that Dr. Murray demonstrated deliberate indifference to the decedents' serious medical needs. According to Plaintiffs, Dr. Murray's failing to provide around-the-clock medical care at the Gurney Unit "placed inmates at risk during the evening and middle of the night" when medical care was immediately needed. This conclusory allegation does not demonstrate Dr. Murray was deliberately indifferent to decedents' serious health needs. There is no constitutional requirement that inmates be afforded around-the-clock medical care at their unit of assignment. The fact that medical staff was not at the Gurney Unit from 6 PM to 9 AM does not mean decedents were denied access to medical care during those hours. Inmates with immediate medical needs could be examined by medical staff at the Beto Unit or transported to a hospital.

Plaintiffs' conclusory allegations simply do not support the corresponding legal conclusions. Plaintiffs do not allege or demonstrate how Dr. Murray was personally involved in the alleged unconstitutional conditions of confinement that allegedly caused the deaths of Mr. Adams, James, and Hudson. Because Plaintiffs fail to provide anything more than conclusory allegations, they do not overcome Dr. Murray's entitlement to qualified immunity.

**B.     Plaintiffs' claims against Dr. Murray must be dismissed because they fail to overcome his entitlement to qualified immunity.**

**1.     Qualified immunity is an immunity from suit, not just a defense to liability.**

Qualified immunity is an immunity from suit and not just a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, qualified immunity shields a defendant from the costs of trial and the burdens of broad-reaching discovery. *Gaines v. Davis*, 928 F.2d 705, 706 (5th Cir. 1991), *reh'g denied*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The Supreme Court has repeatedly stressed that qualified immunity mut be decided at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). And this Court has long held that qualified immunity is to be resolved on the face of the pleadings and with limited resort to pre-trial discovery. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir.1994) (citing *James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990)). In fact, district courts have an obligation to carefully scrutinize a plaintiff's claims before subjecting public officials to broad-reaching discovery. *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986). This rule is designed to protect public officials from the burdens and costs of litigation and to prevent disruption of government responsibilities. *Harlow*, 457 U.S. at 817.

Before even limited discovery begins, the district court must find that the plaintiff's pleadings assert *facts*, which if true, would overcome the defense of qualified immunity. *Wicks v. Mississippi State Employment Servs.*, 41 F.3d 991, 994 (5th Cir.), *cert. denied*, 115 S.Ct. 2555 (1995) (emphasis added). In order to overcome the qualified immunity defense, the plaintiff must allege *specific facts* which, if true, would demonstrate that the defendant violated clearly established statutory or constitutional rights. *Id*. at 995 (emphasis added).

### 2. Dr. Murray is entitled to qualified immunity because Plaintiffs' conclusory allegations fail to state actionable claims against him.

Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fifth Circuit has emphasized the extent of this shield, finding that a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a Defendant invokes qualified immunity, the burden is on the Plaintiff to demonstrate the inapplicability of the defense.").

In determining whether the plaintiff has successfully overcome the qualified immunity defense, the court engages in a two-step inquiry. First, the court must consider "whether the plaintiff

asserted a violation of a constitutional right at all -- prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." *Siegert v. Gilley*, 500 U.S. 226, 230 (1991) (internal quotation marks omitted); *Samaad v. City of Dallas*, 940 F.2d 925, 940 (5th Cir. 1991) (holding that *Siegert* requires a plaintiff first to allege a constitutional violation before a court will decide whether the right is "clearly established"). In making this assessment, the court uses "currently applicable constitutional standards." *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

If a plaintiff has not cleared this first hurdle, the court need not further address the question of qualified immunity. However, if the court finds that the plaintiff has alleged the violation of a constitutional right–a clearly established constitutional right--the court must go on to determine if the defendant official's action could reasonably have been thought consistent with that right. *Siegert*, 500 U.S. at 230.

In making this second determination, the court looks to whether the defendant's actions were objectively reasonable as measured by reference to the law as it existed at the time the conduct occurred and in light of the information that the defendant possessed. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1992)(citing *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. (1993)); *Valencia v. Wiggins*, 981 F.2d 1440, 1448 (5th Cir.) *cert. denied*, 113 S.Ct. 2998 (1993); *Anderson v. Creighton*, 483 U.S. 635, 639(1987); *Streetman v. Jordan*, 918 F.2d 555, 556 (5th Cir. 1990). Regardless of a defendant official's mistaken assumptions, if his conduct is determined to have been objectively reasonable, he is entitled to qualified immunity. Thus, officials are immune if their "actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638.

In order to overcome Dr. Murray's entitlement to qualified immunity, Plaintiffs must establish the violation of a clearly established constitutional right. However, because Plaintiffs cannot establish that Dr. Murray's actions violated clearly established constitutional rights, Plaintiffs fail to state a viable claim and this case should be dismissed.

Personal involvement is an essential element of all actions brought under § 1983. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate each defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).

Section 1983 does not create supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Moreover, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir.1985) (per curiam). However, a supervisor may be held liable if (1) he affirmatively participates in the acts that cause the constitutional deprivation or (2) implements an unconstitutional policy that causes plaintiff's injury. *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

In the amended complaint, Plaintiffs fail to allege facts demonstrating Dr. Murray's personal involvement in the alleged constitutional deprivations. Plaintiffs do not contend Dr. Murray affirmatively participated in the alleged wrongs. Instead, Plaintiffs attempt to ascribe personal involvement to Dr. Murray by stating that, as a resident of Texas, he is aware that summer-time temperatures throughout the state routinely exceed 90 degrees Farenheit; he is aware many of the

housing areas in TDCJ units are not air-conditioned; and he knows that some inmates have medical conditions that may cause them to be vulnerable to extreme temperatures. Plaintiffs assert this knowledge somehow corresponds to Dr. Murray's personal involvement in the alleged unconstitutional conditions that caused the death of Mr. Adams, James, and Hudson. But without alleging Dr. Murray had personal knowledge of the decedents' medical conditions, their assignments to the Gurney Unit, the dates of their assignments, the circumstances surrounding their assignments, and the medical symptoms each presented during their assignment at the Gurney Unit, Plaintiffs cannot demonstrate Dr. Murray's personal involvement in the alleged unconstitutional conditions of confinement.

To the extent Plaintiffs attempt to demonstrate Dr. Murray's personal involvement in the conditions alleged to have caused the deaths of the decedents by stating some of the policies for which he is responsible were deliberately indifferent to inmates that are vulnerable to heat, such attempts are without merit. Plaintiffs do not demonstrate how the policies identified *caused* the deaths of Mr. Adams, James, and Hudson. For example, the facts alleged by Plaintiffs do not support the argument that Dr. Murray implemented a policy or practice delaying intake physicals for extended periods of time. According to the amended complaint, each of the decedents was evaluated by medical personnel upon their arrival at the Gurney Unit. Moreover, Plaintiffs fail to demonstrate how the policy of not providing around-the-clock on-site care at the Gurney Unit caused decedents' deaths. Plaintiffs cannot demonstrate that affording inmates at the Gurney Unit after-hours care at the Beto Unit or at a local hospital amounts to deliberate indifference to inmates' serious medical needs.

# III.
# Conclusion

Because Plaintiffs' fail to overcome his entitlement to qualified immunity, Defendant Owen Murray requests that the Court dismiss with prejudice Plaintiffs' claims against him.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

**KIM COOGAN**
Assistant Attorney General
Attorney-in-Charge

*/s/* SHANNA ELIZABETH MOLINARE
**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General
State Bar No. 24041506
Southern District No. 38632

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2080 (Phone No.)
(512) 495-9139 (Fax No.)

**ATTORNEYS FOR DEFENDANT MURRAY**

NOTICE OF ELECTRONIC FILING

I, **SHANNA ELIZABETH MOLINARE**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing **Defendant Owen Murray's Motion to Dismiss** in accordance with the Electronic Case Files System of the Southern District of Texas on September 17, 2013.


*/s/* SHANNA ELIZABETH MOLINARE
**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General


CERTIFICATE OF SERVICE

I, SHANNA ELIZABETH MOLINARE, Assistant Attorney General of Texas, do hereby certify that a true copy of **Defendant Owen Murray's Motion to Dismiss** has been served upon all counsel of record via electronic filing notification on September 17, 2013.  In addition, a courtesy copy has been sent to:

Jeff Edwards
The Edwards Law Firm
1101 East 11th St.
Austin, TX 78702
*Attorney for Plaintiffs*

Scott Medlock
Texas Civil Rights Project
1405 Montopolis Dr.
Austin, TX 78741
*Attorney for Plaintiffs*

| | |
|---|---|
| Bruce Garcia<br>Rachael Airen<br>Office of the Attorney General<br>*Attorneys for Defendants TDCJ,*<br>*Eason, and Miller* | *via Intra-Departmental Mail* |
| Demetri Anastasiadis<br>Office of the Attorney General<br>*Attorney for Livingston, Thaler,*<br>*and Stephens* | *via Intra-Departmental Mail* |

<u>*/s/* SHANNA ELIZABETH MOLINARE</u>
**SHANNA ELIZABETH MOLINARE**
Assistant Attorney General
